## COMMONWEALTH OF PENNSYLVANIA, Appellee,

v.

## Bobo SMITH, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 25, 2004.

Filed April 20, 2004.

Charles D. Jonas, Public Defender, Doylestown, for appellant.

Colin D. Dougherty, Assistant District Attorney, for Commonwealth, appellee.

Before: TODD, PANELLA, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Bobo Smith appeals from the judgment of sentence entered upon his conviction of Simple Assault. *See* 18 Pa.C.S. § 2701(a)(1). Smith contends that the trial court erred in refusing to grant his request for a continuance to investigate medical records. Smith also claims that the evidence was insufficient to sustain his conviction. Upon review, we find no merit in Smith's contentions. Accordingly, we affirm.

¶ 2 On October 21, 2002, Smith reported to work at the Woods School where he was employed as a caretaker. The Woods School is a residential facility that specializes in educating and caring for children and adults with developmental disabilities. Smith's responsibilities as a caretaker entailed providing assistance to the Woods School's residents in performing some of the most basic tasks (*i.e.* bathing, dressing, eating). On the day in question, Smith was assigned to care for an autistic ten-year old boy named R.P. Due to his autistic condition, R.P. is unable to communicate verbally; however, R.P. is extremely energetic and in fact notorious at the Woods School for "eloping." Eloping is a term used by the Woods School to signify when a resident leaves his designated area without authorization.

¶ 3 In accordance with his work assignment, Smith attempted to locate R.P. at his designated area but to no avail. Smith reported R.P.'s absence to his supervisor, Richard Reid. Reid, almost simultaneously, received a telephone call that R.P. was in another building of the program creating a disturbance. Reid instructed Smith to retrieve R.P. and bring him back to his designated building, which Smith accomplished without incident. R.P. then engaged in recreational activities with friends. After a while, R.P. eloped again and ran out the door headed for another building. Smith gave chase and grabbed R.P. by the arm in accordance with a physical assistance technique authorized by the Woods School. Smith returned R.P. to his designated building again without incident. In an attempt to calm R.P., Smith gave him a shower and then took R.P. to his room. Smith began cleaning R.P.'s room in preparation for parental visitation when R.P. attempted to elope again. Smith gave chase and caught R.P. by the arm in the hallway before he made

it out the back door. Smith escorted R.P. back to his room and sat him on the bed.

¶ 4 Meanwhile, Reid made his customary rounds of the six buildings. As he came to R.P.'s room, Reid saw R.P. sitting on the foot of the bed and Smith leaning over. Reid then saw Smith punch R.P. in the chest with a closed fist. Woods School placed Smith under immediate suspension and took R.P. to the resident nurse who conducted a body exam. The nurse reported red marks on R.P.'s chest. R.P.'s parents were notified and took R.P. to the hospital the following day. The hospital exam revealed bruising on R.P.'s chest and abdomen. Woods School ultimately terminated Smith's employment.

¶ 5 R.P.'s parents notified the police and the Commonwealth charged Smith with Harassment, Neglect of Care for a Dependant Person, and Simple Assault. *See* 18 Pa.C.S. §§ 2709, 2713 (respectively). Prior to trial, Smith made an oral motion to dismiss the charge of Neglect of Care for a Dependent Person, which the trial court granted. Smith then proceeded to a jury trial and was convicted of Simple Assault and Harassment.

■ ¶ 6 The Honorable David W. Heckler merged Smith's conviction of Harassment with his Simple Assault conviction for sentencing purposes. Judge Heckler then sentenced Smith to eighteen months probation and mandated that Smith attend anger management classes. Smith filed a timely notice of appeal and presents the following questions for our review:

A. Did the trial court err in denying [Smith's] request for a continuance to investigate medical records that were given to [Smith] on the eve of trial?

B. Was the evidence insufficient to sustain a conviction for Simple Assault?

Brief for Appellant at 5.

The trial court has the discretion to grant or deny a request for a continuance. Such grant or denial will be reversed only on a showing of an abuse of discretion. Discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.

*Commonwealth v. Pantano*, 836 A.2d 948, 950 (Pa.Super.2003) (internal citations and quotation marks omitted); *see also* Pa. R.Crim.P. 106(C). "The grant of a continuance is discretionary and a refusal to grant is reversible error only if prejudice or a palpable and manifest abuse of discretion is demonstrated." *Commonwealth v. Griffin*, 804 A.2d 1, 12 (Pa.Super.2002) (citation omitted).

■ ¶ 7 An examination of the record reveals that the Commonwealth provided Smith with R.P.'s hospital reports at approximately 4:00 P.M. on Friday, March 14, 2003. Notes of Testimony–Pre–Trial Motions (N.T.P.T.M.), 3/17/03, at 6–7. Smith's trial was scheduled to begin on Monday, March 17, 2003. On the morning of his trial date, Smith made an oral pretrial motion requesting a continuance. N.T.P.T.M., 3/17/03, at 6. Smith represented,

Well, my request for a continuance is that these [hospital] reports are different than what was observed by the people at Woods Services. People at Woods Services reported a small red mark. [The hospital] reports indicate a deep bruise.

I've had a chance to speak with people from Woods Services since then. I haven't had a chance to speak to the people from [the hospital].

N.T.P.T.M., 3/17/03, at 21–22. After reviewing the hospital reports, Judge Heckler stated,

These reports in summary don't say much of anything that I can perceive beyond—you have a deep bruise (contusion). The name of the emergency room physician is spelled out. * * * *

I will simply tell you that at least since sometime around noon today you've been on notice that if·you think that either talking to Dr. Marchiondo, M–A–R–C–H–I–O–N–D–O, for doing some further investigation into this matter is of some importance to your client's case, you should be getting to that, either lining him up by phone so you can enlighten yourself as to what he could say, or get an investigator, down there to do whatever you want to do. I'm not going to continue the matter . . . .

N.T.P.T.M., 3/17/03, at 21–22.

■ ¶ 8 We conclude that Judge Heckler's ruling does not constitute reversible error. Bodily injury is an element of Simple Assault, and it is defined as an "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301. The hospital reports disclose that R.P. suffered a deep contusion, which is probative of bodily injury. Smith was given this probative evidence essentially on the eve of trial. The trial court docket reveals that Smith never made a previous request for a continuance. All of the evidence in Smith's trial, including the hospital records, was presented· to the·jury on March 17, 2003, the same day that Smith requested a continuance. We have examined the record and find no evidence that Smith made this request for a continuance in bad faith or with any other improper motive. Based on these factors, we will concede, *arguendo*, that Judge Heckler committed error in denying Smith's request for a continuance; however, such error was harmless. *See Commonwealth v. Rasheed*, 536 Pa. 567, 640 A.2d 896, 899 (1994) (reiterating that harmless error oc-

curs when the "evidence of guilt is so overwhelming and [ ] the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error" could not have contributed to the verdict).

¶ 9 Excepting the hospital reports at issue, the following evidence was adduced at trial: Smith was assigned to care for R.P. Notes of Testimony–Trial (N.T.T.), 3/17/03, at 116. R.P. eloped on three different occasions throughout the day. N.T.T., 3/17/03, at 116, 120, 122. When asked how R.P.'s behavior affected him, Smith stated "I got frustrated." N.T.T., 3/17/03, at 125–26.· After R.P. eloped for the third time, Reid, the residential program director for the Woods School, testified that he saw Smith strike R.P. in the chest with a closed fist. N.T.T., 3/17/03, at 61. Shortly thereafter, the resident licensed practical nurse conducted a body check on R.P. and found small red marks on R.P.'s chest. N.T.T., 3/17/03, at 77.

■ ¶ 10 For the crime of Simple Assault, "[t]he existence of substantial pain may be inferred from the circumstances surrounding the use of physical force even in the absence of a significant injury." *Commonwealth v. Ogin*, 373 Pa.Super. 116, 540 A.2d 549, 552 (1988). From the record, we conclude that at the time of this incident, Smith was a twenty-six year old man, approximately 5 feet 4 inches tall and weighed approximately 140 pounds. Smith was not only present at trial, he took the stand and testified on his own behalf. Therefore, we can reasonably conclude that the jury adequately observed Smith's physical characteristics.

¶ 11 Due to R.P.'s autism, he was unable to testify and articulate any degree of pain that he might have endured. In fact, the record is unclear if R.P. even attended trial. Nevertheless, the Commonwealth introduced into evidence a picture· which

was a fair and accurate description of R.P. and testimony that "[R.P.] is small" and weighed approximately fifty to sixty pounds. N.T.T., 3/17/03, at 80, 81, 98. Based on R.P.'s picture, testimony, and Smith's physical appearance, the jury could reasonably infer that Smith is more than twice R.P.'s size.

¶ 12 Therefore, a jury could reasonably infer that when a frustrated, twenty-six year old man who is at least twice the size of a still developing, ten-year old boy, strikes the child in the chest with a closed fist leaving red marks, the victim endured substantial pain. Consequently, even without the hospital reports, we conclude the evidence of Smith's guilt is overwhelming. We further conclude that the prejudicial effect of Judge Heckler failing to grant a continuance under these circumstances is so insignificant by comparison that it is clear beyond a reasonable doubt, that such error was indeed harmless. Accordingly, we conclude that Smith's first question is without merit.

■ ¶ 13 Smith's second question challenges the sufficiency of the evidence.

The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could have determined that all of the elements of the crime have been established beyond a reasonable doubt. [T]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the jury unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Aguado,* 760 A.2d 1181, 1184–85 (Pa.Super.2000) (*en banc*) (internal quotations and citations omitted). In support of his sufficiency claim, Smith argues that the resident nurse only found small red marks on R.P.'s chest and that she did not direct R.P. to undergo any treatment. Brief for Appellant at 16–17. Again, for the crime of Simple Assault, substantial pain may be inferred. Neither the physical manifestation of an injury nor subsequent treatment is dispositive. Based on the foregoing discussion, there was sufficient evidence to sustain Smith's conviction for Simple Assault. *See Commonwealth v. Jorgenson,* 341 Pa.Super. 550, 492 A.2d 2, 6 (1985) (finding that the evidence was sufficient to sustain a Simple Assault conviction where the assailant struck the victim twice across the face, as "[a] jury may infer that striking a person across the face causes pain."). Consequently, Smith's second question is also without merit.

¶ 14 Judgment of Sentence AFFIRMED.