J-S20004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | | |
| ARCHIE G. MOSSES | | |
| Appellant | | No. 3504 EDA 2015 |

Appeal from the Judgment of Sentence November 9, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013782-2014

BEFORE:  BOWES, J., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 24, 2017**

Archie G. Mosses appeals from the aggregate judgment of sentence of three to six years incarceration followed by a five year period of probation imposed following his bench trial convictions for, *inter alia*, prohibited possession of a firearm and simple assault.  We affirm.

The trial court thoroughly set forth the facts established by the Commonwealth and we adopt its summation as our own.

> The incident in this case took place on November 20, 2014.  On that day at approximately 11:00 a.m., the Complainant, Latia Mosses, became involved in a verbal altercation with her husband, Appellant Archie Mosses, in the bedroom of their home.  Their three-year-old child was in the bedroom with them at this time.  The altercation became violent as Mr. Mosses began choking Ms. Mosses with his hands and slamming her around the bedroom.  Appellant also pulled Complainant's hair, causing her braids to rip out from her scalp.  Complainant attempted to free herself by biting and scratching the Appellant.

At one point in the scuffle, Appellant threw Complainant onto the bed and retrieved a gun from the nearby closet. Appellant pointed the gun at Complainant and told her he would "blow her fu\*\*ing head off."

The Appellant's brother then came into the bedroom and took the gun from Appellant saying, "You know the safety isn't on." Appellant's brother then went back downstairs, taking both the gun and the three-year-old child with him. Complainant and Appellant continued to fight and Appellant began poking Complainant in the face with a screwdriver. Complainant finally ran downstairs with Appellant following behind her. Appellant asked his brother for the gun back, but his brother refused. Complainant then grabbed a knife from the kitchen to defend herself, but Appellant continued to walk toward her, saying "You think I won't still beat you the fu\*\* up because you got a knife." Complainant dropped the knife and left for her aunt's house in order to call the police.

When the police arrived, they noted that the Complainant had bruising under her left eye and red marks around her neck. Police then took the Complainant back to her home where she positively identified the Appellant. Police retrieved the firearm from the Appellant's brother who stated the firearm was his and that he had a license to carry permit. Records revealed the Appellant did not have a permit to carry a firearm. Complainant was then transported to the Northwest Detective Division (NWDD) where she was interviewed and had photographs taken of the bruising under her left eye, redness to the left side of her face, bruising to her left wrist, and red marks around her neck.

Trial Court Opinion, 7/19/16, at 3-4 (citations omitted). Appellant was charged with aggravated assault, prohibited possession of a firearm, possession of an instrument of crime, terroristic threats, simple assault, and recklessly endangering another person. Following a bench trial, Appellant was acquitted of aggravated assault and convicted of the remaining offenses, and the trial court imposed the aforementioned sentence.

Appellant did not file post-sentence motions but filed a timely notice of appeal. Appellant complied with the trial court's order to file a concise statement of matters complained of on appeal and the court authored its opinion in response. Appellant raises four claims for our review.

> 1. Whether the verdict is against the weight of the evidence where there is insufficient evidence to establish that Defendant possessed a firearm, constructively or otherwise during the commission of the alleged crime where no weapon was found inside the property only one being legally carried by Appellant's brother.
>
> [2]. Whether the trial court erred in finding that the defendant was guilty of simple assault where there were no medical records of the alleged victim, and where the victim did not seek medical treatment for approximately one (1) day.
>
> [3]. Whether the trial court erred when it permitted and took into consideration evidence of the defendant's past conduct which was improperly referred to by the complaining witness on cross examination.
>
> 4. Whether the [t]rial [c]ourt erred in permitting the Commonwealth to present prison tapes for which there was no proper foundation or authentication, the content of which contained prejudicial material and which prejudiced the outcome of the trial.

Appellant's brief at 4-5 (second and third issues reordered for ease of discussion).

Appellant's first issue concerns his conviction for prohibited possession of a firearm. Appellant conflates two distinct concepts: weight and sufficiency. The two claims have different standards of review as well as separate remedies. A claim stating that the evidence was insufficient to

support the verdict asserts that the evidence set forth by the Commonwealth failed to meet all the elements of the pertinent crime. In reviewing the sufficiency of the evidence we

> must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. It is well-established that the Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence and the jury, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence.

**Commonwealth v. Yandamuri**, 159 A.3d 503, 514 (Pa. 2017) (quotation marks and citations omitted). Whether the evidence was sufficient to support the conviction presents a matter of law; our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Walls**, 144 A.3d 926, 931 (Pa.Super. 2016) (citation omitted). A successful sufficiency challenge requires discharge. **Commonwealth v. Ford**, 141 A.3d 547, 552 (Pa.Super. 2016).

A claim attacking the weight of the evidence, on the other hand, concedes that there is sufficient evidence to support the verdict, but questions which evidence the fact-finder should have believed. Thus, a successful weight challenge requires a new trial. **Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013). A weight claim must first be presented to the trial court and therefore must be preserved in a post-sentence motion.

As we explained in **Commonwealth v. Konias**, 136 A.3d 1014, 1022 (Pa.Super. 2016):

> When we review a weight-of-the-evidence challenge, we do not actually examine the underlying question; instead, we examine the trial court's exercise of discretion in resolving the challenge. **Commonwealth v. Leatherby**, 116 A.3d 73, 82 (Pa.Super. 2015). This type of review is necessitated by the fact that the trial judge heard and saw the evidence presented. **Id.**

**Id**. at 1022.

Appellant did not file a post-sentence motion. Thus, any challenge to the weight of the testimony presented has been waived. We therefore examine his claim as a sufficiency of the evidence claim.

Appellant first challenges the sufficiency of the evidence supporting the firearms charge. The Commonwealth must prove the following:

**(a) Offense defined.**—

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. § 6105. The parties stipulated that Appellant had been convicted of an offense enumerated in subsection (b). N.T., 6/19/15, at 57. Therefore, at issue is whether Appellant "possess[ed] . . . a firearm[.]" Possession of a firearm may be proven by wholly circumstantial evidence. **Commonwealth v. Buford**, 101 A.3d 1182, 1189 (Pa.Super. 2014).

Appellant's legal argument assumes that Ms. Mosses' testimony was not worthy of belief, and relies upon the favorable testimony given by Appellant's brother, Hiram. "Hiram Mosses testified that his brother never possessed the gun and there was not a firearm in the house." Appellant's brief at 17. However, we are required to view all of the evidence in the light most favorable to the Commonwealth as verdict winner, and "[p]recedent forbids us from substituting our judgment of facts for that of the fact-finder." *Commonwealth v. Antidormi*, 84 A.3d 736, 757 (Pa.Super. 2014). Ms. Mosses testified that Appellant retrieved a firearm, pointed it at her, and threatened to blow off her head. Furthermore, while no explanation was necessary, the victim supplied an answer as to why Appellant's brother possessed the firearm, as she stated that Hiram came upstairs and took the gun from Appellant during the incident. N.T., 6/19/15, at 14. Hence, the evidence was plainly sufficient to sustain the firearm charge.

Appellant's next sufficiency challenge is to the simple assault conviction. To establish the crime of simple assault, the Commonwealth must establish that the actor "attempt[ed] to cause or intentionally, knowingly or recklessly cause[d] bodily injury to another." 18 Pa.C.S. § 2701. Bodily injury is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301. Substantial pain may be inferred from the circumstances surrounding the physical force used. *Commonwealth v. Smith*, 848 A.2d 973 (Pa.Super. 2004) (citing *Commonwealth v. Ogin*,

540 A.2d 549, 552 (Pa.Super. 1988)). Moreover, "The Commonwealth need not establish the victim actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth establishes an attempt to inflict bodily injury." ***Commonwealth v. Martuscelli***, 54 A.3d 940, 948 (Pa.Super. 2012). That intent may be shown by circumstances which reasonably suggest the defendant intended to cause injury. ***Id***.

Appellant alleges that the prosecution did not introduce medical records and therefore failed to prove bodily injury. He states that "[t]here is no evidence that there was any impairment of physical condition or substantial pain and that there was any intent to do so." Appellant's brief at 20. Viewing the evidence in the light most favorable to the Commonwealth, as we must, the victim testified that Appellant choked her, threw her into the wall and floor of the room, and pulled out handfuls of her hair. ***Id***. at 12. Ms. Mosses reviewed photographs depicting her injuries, which included bruising, a black eye, and bald spots where her hair was ripped from the scalp, and she confirmed that these injuries resulted from Appellant's attack. This testimony constitutes direct evidence of bodily injury, and, while the victim did not directly testify to substantial pain, we find that the Commonwealth inferentially established substantial pain under these facts. Additionally, the Commonwealth clearly presented sufficient evidence for the fact-finder to conclude that Appellant intended to cause bodily injury.

Therefore, the Commonwealth proved both actual bodily injury and an attempt to cause bodily injury. No relief is due.

Appellant's third issue involves the presentation of prior bad acts testimony. The alleged error concerns a statement by the victim. During cross-examination, counsel asked Ms. Mosses multiple questions regarding Appellant's affair with another woman, Christina Edwards, suggesting that the victim was the aggressor and concocted the story of Appellant's assault.

Q. Do you know Christina Edwards?

A. Yes.

Q. And you knew of her on November 20, 2014?

A. No.

Q. You didn't know of her then?

A. To my knowledge she was no longer in the picture and no longer existed. Anytime was he sure he wanted [sic] to be a family with myself and our daughter, he convinced me that he did. I had no reason to think she was still part of our lives.

Q. You were aware of the existence prior to November 20?

A. Yes.

THE COURT: There is a Court Reporter. She can't take you both at the same time.

Q. You would agree that you knew of her and my client's relationship with her before November 20?

A. Yes.

Q. And you knew he had dated her?

A. Yes.

Q. And you were in the room on November 20 and you found out that my client had impregnated her; is that correct?

N.T., 6/19/15, at 30. Appellant then suggested that Ms. Mosses lied about the gun. In response, Ms. Mosses, clearly frustrated by the questioning, *sua sponte* brought up Appellant's criminal history.

Q. You knew about making gun allegations you would get immediate response?

A. It is not an allegation, it is truth. I have no reason to lie.

THE COURT: Stop, stop. This is not a fight. Ask a question.

Q. It is the truth that the weapon you are referring to never left the waistband of his brother throughout the entire incident?

A. That is a lie. The gun was never on Hiram. It was in the closet. He pulled it out and told me he was going to blow my f\*\*king head off in front of my three year old daughter. What are you talking about?

Q. You knew by making a gun allegation things would rise to --

A. **Check your client's wrap [*sic*] sheet**. I don't have to lie on him.

[APPELLANT]: I move for a mistrial.

THE COURT: No. She had not said something.

*Id*. at 36-37 (emphasis added).

Appellant asserts that this vague reference to Appellant's criminal history violated Pa.R.E. 404(b). "[Rule] 404(b)(1) provides that evidence of 'other crimes, wrongs, or acts is not admissible to prove the character of a

- 9 -

person in order to show conformity therewith.'" Appellant's brief at 18. First, the evidence in question was not admitted by the trial court and therefore the only issue on appeal is whether the mistrial was improperly denied. However: "It has long been held that trial judges, sitting as factfinders, are presumed to ignore prejudicial evidence in reaching a verdict." *Commonwealth v. Irwin*, 579 A.2d 955, 957 (Pa.Super. 1990). Since the trial court is presumed to have ignored the improper remark, the mistrial was properly denied.

Finally, Appellant argues that the court erred in permitting the Commonwealth to present, on cross-examination of Hiram Mosses, audiotapes for which there was no proper foundation or authentication. Our review of a trial court's evidentiary rulings applies the following standard.

> The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Mickel*, 142 A.3d 870, 874 (Pa.Super. 2016).

The disputed evidence was as follows. Hiram testified on Appellant's behalf and contradicted the victim's account. On cross, the Commonwealth asked, "And did you not tell your brother he needs to call [Ms. Mosses] and tell her to say that none of this happened?" *Id*. at 78. Hiram denied telling Appellant to contact his wife. The Commonwealth then announced that it

- 10 -

intended to play a prison recording from November 25, 2014. *Id*. at 79. Appellant objected, stating that the information was never provided to him in discovery. Appellant was granted a brief recess to listen to the tape.

When the parties reconvened the Commonwealth played the tape, which was not transcribed by the court reporter.[1] *Id*. at 82. Appellant then raised an authentication objection. The trial court permitted more questioning. Hiram stated that the voices on the tape belonged to Appellant and one of his other brothers, John or Aaron. Following redirect examination, the trial court specifically stated, "I don't think it was [Hiram's] voice on the phone." N.T., 7/19/15, at 84.

We find that Appellant is not entitled to relief. Obviously, the Commonwealth's goal was to impeach Hiram by establishing that he did in fact tell Appellant to contact the victim. *See* Pa.R.E. 613(a) ("A witness may be examined concerning a prior inconsistent statement[.]"). Hiram denied that he made the statements in question, leading the prosecutor to attempt to prove the statement through extrinsic evidence. "An inconsistent statement may be proved by getting the witness on the stand to admit making it. But where, as here, the witness does not admit making the inconsistent statement, it may be proved by extrinsic evidence[.]"

---

[1] Both parties agree that the recording contains a male voice suggesting to Appellant that Appellant call Ms. Mosses to have her say that nothing happened.

*Commonwealth v. Brown*, 448 A.2d 1097, 1103–04 (Pa.Super. 1982);

Pa.R.E. 613(b).

The relevance of the extrinsic evidence turned on an authentication issue, as the tape did not otherwise damage Hiram's credibility.[2] **See** Pa.R.E. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."); Pa.R.E. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact existed.").[3]

Since the trial judge explicitly stated that he did not think Hiram's voice was on the phone, he determined that the call was not properly authenticated and was therefore irrelevant to the attempted impeachment. Furthermore, we presume that the court did not consider the prejudicial

_____

[2] We disagree with the Commonwealth's assertion that the evidence was properly authenticated and admitted because Hiram testified that the voices on the call belonged to Appellant and another brother. Commonwealth's brief at 21. That testimony would indeed authenticate the tape, but then the authentication is no longer proper, as the tape would have become irrelevant. The fact that Appellant's other brothers urged Appellant to contact the victim does not impeach Hiram's testimony.

[3] Rule 901(a) is identical to F.R.E. 901(a). The federal rule's Advisory Committee Notes to F.R.E. 901(a) states, "This requirement of showing authenticity or identity falls in the category of relevancy dependent upon fulfillment of a condition of fact[.]"

value of this evidence, *e.g.* as generally discrediting Appellant based on his brothers' actions, in reaching its verdict.[4]  "When, as here, a case is tried to the court rather than a jury, we will presume that the court applied proper legal standards."  ***Commonwealth v. Hunter***, 381 554 A.2d 550, 558 (Pa.Super. 1989) (citation omitted).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/24/2017

---

[4] The trial court's opinion addresses the claim in a manner contradictory to its trial ruling.  "Here, the admission of the prison tapes did not result in a prejudicial result for the trial. The tapes had the proper foundation and were authenticated by a witness' testimony. As such, this Court determined that the tapes should have been admissible as evidence."  Trial Court Opinion, 7/19/16, at 10.   We examine this issue in the context of the actual ruling rendered at trial.