J-S15036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD BYRD | : | |
| | : | |
| Appellant | : | No. 1806 EDA 2023 |

Appeal from the Judgment of Sentence Entered May 26, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009823-2021

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED DECEMBER 3, 2024**

Appellant, Ronald Byrd, appeals from the judgment of sentence entered following his conviction of aggravated assault and related crimes stemming from a concerted attack on Chester Johnson.  In addition, on the basis that he has determined that this appeal is wholly frivolous, Appellant's attorney has filed an application to withdraw as counsel and a brief pursuant to **_Anders v. California_**, 386 U.S. 738 (1967).  Because we agree with counsel's assessment, we grant the application to withdraw and affirm.

The trial court offered the following summary of the factual history of this case:

> On March 27, 2020, Chester Johnson and his girlfriend were with friends on the 5200 block of Jefferson Street in Philadelphia. An argument erupted between Johnson's girlfriend and another

_____

[*] Retired Senior Judge assigned to the Superior Court.

woman. Johnson intervened, positioning himself between the two women. During his attempt to separate them, the other woman fell to the ground. As she got up, she threatened Johnson's life. This argument served as the precursor for the vicious assault on Johnson later that night. (N.T., 2/27/23, pp. 68-70).

After d[e]fusing the argument, Johnson went home to shower and change his clothes. He returned to the area of 5200 Jefferson Street later that night. As Johnson was walking down the street a car pulled up. The woman involved in the altercation with Johnson's girlfriend emerged from the car accompanied by three men and two women. Johnson retreated as the group approached. According to Johnson, the group threatened his life and the three men brandished knives. (N.T., 2/27/23, pp. 70-76).

What followed was a brutal assault that left Johnson with serious and permanent injuries. The group punched, kicked and stabbed Johnson numerous times about the head, neck, arms and back. Johnson was hospitalized for an extended period, underwent brain surgery, suffered brain damage and is now partially paralyzed. (N.T., 2/27/23, pp. 93-98, Commonwealth Exhibit C-16). As a result of the attack, Johnson's memory of the incident was compromised, however the surveillance footage presented by the Commonwealth captured the entire incident.

This footage depicted the group attacking Johnson as he tried to escape. Johnson fell to the ground between two parked cars as the group stabbed and beat him. Two men with knives hovered over Johnson and repeatedly stabbed him. One of the knife wielding men was dressed in a black hoodie. The other, later identified as [A]ppellant, was wearing a distinctive blue sweatshirt and white gloves. The attack lasted approximately thirty seconds, after which the group ran back to [A]ppellant's car and fled. (N.T., 2/27/23, pp. 74-94; Commonwealth Exhibits C-4 and 5).

Philadelphia Police Officers Paul Serwinski and Ashley Krause responded to the scene. They found Johnson lying in the street against a car, bleeding from his head and neck. They promptly transported Johnson to Presbyterian Hospital. (N.T., 2/27/23, pp. 3-8).

Detective John Leinmiller was assigned to investigate two reported stabbings on the night in question. One occurred at 52nd

- 2 -

and Jefferson Streets, where Johnson was attacked, and the other took place approximately a block away at 52nd and Lancaster Avenue - coinciding with the time of the first incident. Detectives Leinmiller and Nash visited the hospital to interview the victims about 20-30 minutes after the incidents but were denied entry due to COVID protocols in place at the time. While waiting outside, Detective Leinmiller encountered other police officers conversing with [A]ppellant, who had just dropped off the other stabbing victim, Steven Carr, Appellant had driven Carr to the hospital in a gold Acura. At this point, Detective Leinmiller was unaware that [A]ppellant and his car were connected to Johnson's attack. Detective Leinmiller obtained [A]ppellant's consent to search the Acura. The interior was soaked with blood, and a folding knife was found in the center console. The police secured [A]ppellant's vehicle as part of a crime scene, placed the knife on a property receipt and swabbed it for DNA. (N.T., 2/27/23, pp. 9-24).

In late May of 2020, about two months after the attack, detectives interviewed Johnson and took a sample of his DNA. By this time, the police had reviewed surveillance footage of the attack, and body camera footage of [A]ppellant from the hospital parking lot and developed [A]ppellant as a prime suspect. (N.T., 2/27/23, pp. 28-29).

In both videos, [A]ppellant was depicted wearing the same clothing (a distinctive blue hoodie, which Detective Leinmiller described as having a New York Giants logo and the words "Let's Go Blue!", and white gloves); the car seen leaving the scene of Johnson's attack was similar to the [A]ppellant's car; and blood on the knife found in [A]ppellant's car matched Johnson's DNA. (N.T., 2/27/23, pp. 28-32; Commonwealth Exhibits C-15). Based upon this evidence, the police arrested and charged [A]ppellant in connection with Johnson's stabbing.

Trial Court Opinion, 11/1/23, at 2-4.

In a criminal information filed December 8, 2021, the Commonwealth charged Appellant with attempted murder (18 Pa.C.S. § 901), aggravated assault (18 Pa.C.S. § 2702(a)(1)), simple assault (18 Pa.C.S. § 2701), possession of an instrument of crime ("PIC") (18 Pa.C.S. § 907), reckless

endangering another person ("REAP") (18 Pa.C.S. § 2705), and criminal conspiracy to commit aggravated assault (18 Pa.C.S. § 901).

On February 27, 2023, at the conclusion of a nonjury trial, the trial court found Appellant not guilty of attempted murder and guilty of the remaining crimes. On May 26, 2023, the trial court sentenced Appellant to serve an aggregate term of incarceration of three to six years, to be followed by two years of probation. Appellant's post-sentence motion for reconsideration was denied. This timely appeal followed.

As noted, counsel has filed an application to withdraw from representation and an **Anders** brief. Before we address any questions raised on appeal, we must consider counsel's request to withdraw. **See Commonwealth v. Lilley**, 978 A.2d 995, 997 (Pa. Super. 2009) ("[T]his Court may not review the merits of the underlying issues without first passing on the request to withdraw.") (citation omitted). Counsel who believes an appeal is frivolous and seeks to withdraw from representation under **Anders** must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

**Commonwealth v. Tejada**, 176 A.3d 355, 359 (Pa. Super. 2017). In **Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009), our Supreme

- 4 -

Court addressed the second point of the *Anders* standard, *i.e.*, the contents of the *Anders* brief, which requires that the brief:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. Once counsel has satisfied the *Anders* requirements, this Court then has a duty to conduct its own review of the lower court's proceedings and make an independent determination whether the appeal is wholly frivolous. *Commonwealth v. Edwards*, 906 A.2d 1225, 1228 (Pa. Super. 2006).

In this case, those directives have been satisfied. Within the *Anders* brief, counsel averred that he conducted a conscientious examination of the record. Following that review, counsel concluded that the present appeal is without merit. Counsel sent Appellant a copy of the *Anders* brief and application to withdraw, as well as a letter, a copy of which is attached to the application to withdraw. In the letter, counsel advised Appellant that it is his determination any appeal would be frivolous. Counsel further advised Appellant that he could represent himself or that he could retain private counsel. Appellant has not filed a substantive response with this Court.

We now examine whether the *Anders* brief satisfies our Supreme Court's dictates in *Santiago*, and we determine that it is compliant. The brief

- 5 -

sets forth the procedural history of this case, outlines pertinent authority, and discusses counsel's conclusion that the appeal is frivolous. We thus conclude that the procedural and briefing requirements for withdrawal have been met.

Counsel has set forth the following issues that Appellant believes entitle him to relief:

> A. Was the evidence insufficient to support the trial court's verdict as it related to all charges?
>
> B. Was the trial court's verdict against the weight of the evidence?
>
> C. Did the trial court err by denying Appellant's Motion for Extraordinary Relief prior to sentencing?
>
> D. Did the trial court err by denying Appellant's Motion for Reconsideration because the complainant testified at Appellant's sentencing that Appellant did not attack him?

*Anders* Brief at 4.

Appellant's first issue on appeal attacks the sufficiency of the evidence to support his convictions. *See Anders* Brief at 7-9. Appellant purports to challenge whether the Commonwealth established each element of each crime beyond a reasonable doubt. We will address each conviction in turn.

We analyze arguments challenging the sufficiency of the evidence under the following parameters:

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any

doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014) (citations omitted).

The crime of aggravated assault is set forth at 18 Pa.C.S. § 2702 and provides in relevant part as follows:

**(a) Offense defined.—**A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life . . . .

18 Pa.C.S. § 2702(a)(1). Serious bodily injury is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

The Commonwealth, in sustaining an aggravated assault conviction, need only show the defendant attempted to cause serious bodily injury to another, not that serious bodily injury actually occurred. *Commonwealth v. Galindes*, 786 A.2d 1004, 1012 (Pa. Super. 2001). Attempt, for aggravated assault purposes, is found where the accused intentionally acts in a manner that constitutes a substantial or significant step toward perpetrating serious

bodily injury upon another. *Id.* The Commonwealth can establish specific intent from the circumstances surrounding the incident. *Id.* Our Court has held that the head is a vital part of the body. *See Commonwealth v Burton*, 2 A.3d 598, 602 (Pa. Super. 2010). *See also Commonwealth v. Gray*, 867 A.2d 560, 568 (Pa. Super. 2005) (holding that the infliction of multiple stab wounds, including a wound above the eye and a wound to the scalp, demonstrated intent to inflict serious bodily injury for purposes of aggravated assault conviction).

The trial court offered the following analysis regarding the issue as it pertains to Appellant's conviction of aggravated assault:

> While Johnson had difficulty remembering specific details about the attack itself, this court found his testimony credible. Johnson's testimony, the surveillance footage depicting the attack and the knife found inside [A]ppellant's car shortly after the incident and DNA results, all connected appellant to Johnson's attack. More important, the surveillance video showed [A]ppellant delivering multiple blows to Johnson while the other attackers were also striking, kicking and stabbing Johnson, who lay on the ground, defenseless.
>
> Appellant's actions clearly demonstrated a specific intent to inflict "serious bodily injury" upon the complainant. Appellant and his cohorts repeatedly punched, kicked and stabbed Johnson in the head, neck, arms and back causing Johnson serious bodily injury. As a result of the attack, Johnson was hospitalized for two months, underwent brain surgery, suffered brain damage, and remains partially paralyzed. There was more than enough evidence to support the court[']s verdict[.]

Trial Court Opinion, 11/1/23, at 7. Our review of the record supports the trial court's conclusion.[1]

In addition to the evidence discussed by the trial court, we further observe that blood on the knife found in Appellant's car matched Johnson's DNA. (N.T., 2/27/23, pp. 29-32). Therefore, having thoroughly reviewed the certified record before us on appeal, we agree with the trial court's determination that the Commonwealth presented sufficient evidence to establish beyond a reasonable doubt that Appellant committed the crime of aggravated assault. Accordingly, Appellant's contrary assertion lacks merit.

We next address whether the Commonwealth presented sufficient evidence to support Appellant's conviction of criminal conspiracy. ***See Anders*** Brief at 8-9. To sustain a conviction for criminal conspiracy under 18 Pa.C.S. § 903, "the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." ***Commonwealth v. Fisher***, 80 A.3d 1186, 1190 (Pa. 2013) (citation omitted). "[T]he essence of a criminal

_____

[1] We note that the record on appeal includes two DVDs of exhibits presented by the Commonwealth to the trial court. One of the DVDs contains video footage and still images taken from video footage. In addition, the trial transcript contains detailed narration of what appeared on the video screen as video exhibits were shown in open court. ***See e.g.***, N.T., 2/27/23, at 5-7, 11-13, 14-17. This Court reviewed the video footage and still images, which confirm the trial court's findings.

conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent." *Commonwealth v. Johnson*, 180 A.3d 474, 479 (Pa. Super. 2018) (citation omitted). A conspiracy is almost always proven by circumstantial evidence. *See Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002) (*en banc*). However, the evidence must rise above the mere possibility of guilty collusion. *See id*.

In this case, the criminal objective that was the focus of the charged conspiracy count was aggravated assault of Johnson. The trial court addressed the question of whether the Commonwealth established a conspiracy with the following discussion:

> The evidence in this case, however, demonstrated that [A]ppellant was an active participant in the joint attack of Johnson. In concert with two men and three women, [A]ppellant exited his vehicle and attacked Johnson in unison. When the attack ended, the group got back into [A]ppellant's car and fled, leaving Johnson lying in the street. [A]ppellant then drove Carr-presumably one of his co-conspirators-to the hospital for medical attention. These actions proved beyond a reasonable doubt that [A]ppellant knowingly acted with others in furtherance of the crime of assaulting Johnson.

Trial Court Opinion, 11/1/23, at 9.

Upon review of the evidence presented at trial, we agree with the trial court's determination. Indeed, we are constrained to conclude that the facts stated above, viewed in the light most favorable to the Commonwealth,

- 10 -

amounted to sufficient evidence to establish the crime of criminal conspiracy beyond a reasonable doubt. Any contrary claim lacks merit.

Although not specifically discussed in the **Anders** brief, we will also review Appellant's remaining convictions to determine whether the Commonwealth presented sufficient evidence to support their verdicts. Accordingly, we next address Appellant's conviction of simple assault.

A conviction for simple assault is sustained where the Commonwealth establishes that the defendant attempted to cause or intentionally, knowingly or recklessly causes bodily injury to another. 18 Pa.C.S. § 2701(a)(1). Again, "bodily injury" is defined by statute as "impairment of physical condition or substantial pain." 18 Pa.C.S. § 2301. Substantial pain may be inferred from the circumstances surrounding the physical force used. **See Commonwealth v. Smith**, 848 A.2d 973, 976 (Pa. Super. 2004).

Our review of the record reflects, as discussed in more detail above, that Appellant participated in the attack on Johnson, which included the infliction of multiple stab wounds. It is undisputed that Johnson required significant medical attention for his injuries. Notably, at the time of trial Johnson testified that he was partially paralyzed on his right side. **See** N.T., 2/27/23, at 97-98. Thus, this evidence is sufficient to support the trial court's conclusion, beyond a reasonable doubt, that Appellant knowingly caused bodily injury to Johnson, thereby establishing the crime of simple assault.

Next, we observe that the crime of REAP is satisfied where a defendant "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705.

> Our law defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." To sustain a conviction under section 2705, the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. Danger, not merely the apprehension of danger, must be created. The *mens rea* for recklessly endangering another person is "a conscious disregard of a known risk of death or great bodily harm to another person."

*Commonwealth v. Hopkins*, 747 A.2d 910, 915-916 (Pa. Super. 2000) (internal citations omitted). Importantly, the statute does not require any particular person to be actually placed in danger, but deals with potential risks, as well as cases where a specific person actually is within the zone of danger. *See Commonwealth v. Lawton*, 414 A.2d 658, 662 (Pa. Super. 1979).

The trial court offered the following in support of its determination that the Commonwealth presented sufficient evidence to establish the crime of REAP:

> Appellant and his accomplices repeatedly punched, kicked and stabbed Johnson in the head, neck, arms and back while Johnson lay defenseless in the street. This ruthless attack exhibits [A]ppellant's complete disregard for Johnson's safety and well-being. Not only did [A]ppellant's actions cause serious bodily injury, but they also put Johnson at risk of death.

Trial Court Opinion, 11/1/23, at 10.

- 12 -

Under the totality of the circumstances, the evidence presented at the trial, viewed in the light most favorable to the Commonwealth as the verdict winner, establishes that Appellant participated in the attack and stabbing of Johnson, which resulted in him undergoing multiple surgeries, including traumatic brain surgery. *See* N.T., 2/27/23, at 93. This evidence is sufficient to sustain Appellant's conviction of REAP. Accordingly, any claim to the contrary lacks merit.

Concerning the challenges to the sufficiency of the evidence, we last address Appellant's conviction of PIC. A person is guilty of PIC "if he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907(a). The statute defines instrument of crime as "anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S. § 907(d)(2).

"'[I]t is the actor's criminal purpose that provides the touchstone of his liability' for possessing an instrument of crime." *Commonwealth v. Andrews*, 768 A.2d 309, 317-18 (Pa. 2001) (citation omitted). We have long held that wholly circumstantial evidence is sufficient to support a conviction of PIC. *See Commonwealth v. Young*, 692 A.2d 1112, 1114 (Pa. Super. 1997) (holding that circumstantial evidence was sufficient to sustain conviction of possession of instrument of crime).

The trial court summarized the following applicable evidence supporting this conviction:

Indeed, Appellant and his cohorts stabbed Johnson multiple times with knives. Johnson testified that [A]ppellant was in possession of a knife during the attack. (N.T., 2/27/23, pp. 70-76). Recovered from the center console of Appellant's vehicle was a knife covered [with] Johnson's blood. The evidence clearly established that [A]ppellant was in possession of a knife and his actions proved beyond a reasonable doubt that he intended to use that knife criminally.

Trial Court Opinion, 11/1/23, at 10.

Likewise, our review of the record, viewed in the light most favorable to the Commonwealth, reflects the circumstantial evidence presented by the Commonwealth proved Appellant possessed an instrument of crime. The record establishes the Commonwealth offered evidence that Johnson was brutally stabbed with a knife and that Appellant was present at the scene with a knife and facilitated the exit after the attack. In addition, a blood-stained knife with Johnson's DNA was recovered from Appellant's vehicle. The trial judge, sitting as finder of fact, chose to believe the evidence presented by the Commonwealth and we will not substitute our judgment of that of the trial court. The totality of this circumstantial evidence, viewed in the light most favorable to the Commonwealth, is sufficient to sustain Appellant's conviction of PIC. Consequently, the argument challenging the sufficiency of the evidence lacks merit.

Appellant also argues that the verdict of guilt was against the weight of the evidence. *See Anders* Brief at 4. Specifically, Appellant "challenges the weight of the evidence presented by the Commonwealth at trial." *Id*. at 7.

The threshold question for this Court is whether Appellant's weight issue has been preserved for our review. Pennsylvania Rule of Criminal Procedure 607[2] and its comment instruct that in order to preserve for appellate review a claim that a verdict is against the weight of the evidence, the issue must be raised with the trial judge in a motion for a new trial either orally or in writing prior to sentencing, or in a post-sentence motion. **See** Pa.R.Crim.P. 607. We reiterated in **Commonwealth v. Gillard**, 850 A.2d 1273, 1277 (Pa. Super. 2004), "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." **Id**. at 1277 (citing Pa.R.Crim.P. 607, cmt). The **Gillard** court concluded, "Rule 607 clearly requires that such a claim be raised initially by a motion to the trial court, and the failure to do so compels this Court to find the issue waived, even if it was ultimately addressed by the trial court in its Rule 1925(a)

_____

[2] Pennsylvania Rule of Criminal Procedure 607 governs challenges to the weight of the evidence and provides, in relevant part, as follows:

> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
>> (1) Orally, on the record, at any time before sentencing;
>>
>> (2) By written motion at any time before sentencing; or
>>
>> (3) In a post-sentence motion.

Pa.R.Crim.P. 607(A).

opinion." ***Gillard***, 850 A.2d at 1277 (citation omitted). ***See also***

***Commonwealth v. Butler***, 729 A.2d 1134, 1140 (Pa. Super. 1999) (holding

that a challenge to the weight of the evidence is waived for failure to present

the issue first to the trial court).

Here, Appellant did not file with the trial court either an oral or written

motion for a new trial challenging the weight of the evidence, prior to

sentencing or post-sentence.[3] Rather, Appellant raised his weight of the

evidence claim for the first time in his Pa.R.A.P. 1925(b) statement. Hence,

we conclude that the issue challenging the weight of the evidence is waived.

Pa.R.Crim.P. 607; ***Gillard***, 850 A.2d at 1277.

In his final two issues, Appellant argues that the trial court erred in

denying his motion for extraordinary relief and his motion for reconsideration.

***See Anders*** Brief at 4, 9. It appears this claim relates to Johnson's comments

during Appellant's sentencing hearing wherein Johnson ostensibly recanted

trial testimony and the trial court's refusal to grant relief based upon Johnson's

statements.[4]

_____

[3] We observe that Appellant filed a post-sentence motion for reconsideration. However, that motion, which raised potential mitigating factors to be considered in fashioning his sentence, did not present a challenge to the weight of the evidence presented at trial. ***See*** Motion to Reconsider, 6/5/23, at 1-2 (unnumbered). Therefore, the motion did not preserve a weight of the evidence claim.

[4] Johnson made the following statements at Appellant's sentencing hearing:

*(Footnote Continued Next Page)*

Initially, we observe the certified record before this Court is devoid of any indication that Appellant filed with the trial court a motion for extraordinary relief, either written or oral. We do observe that following sentencing, Appellant filed a written motion for reconsideration. *See* Motion for Reconsideration, 6/5/23. However, that motion made no reference to or argument concerning Johnson's statements at Appellant's sentencing hearing. *See id*. Rather, Appellant's motion sought reconsideration of Appellant's sentence, highlighting Appellant's work history and the fact that Appellant "is the sol[e] provider and caretaker for his 17-year-old son, who would not have any means of support without [Appellant]." *See id*. at 2 (unnumbered).

Pennsylvania Rule of Appellate Procedure 302(a) provides that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Likewise, we have long held that "[a] claim

_____

I just wanted the [c]ourt to know that the night that incident happened, [Appellant] was there, but he did nothing to me. The only thing he's guilty of was giving someone a ride to the hospital. He did not touch me.

\*\*\*

[H]e was present, but he did not touch me. He did not stab me. [Appellant] is only guilty of giving his family a ride to the hospital that I stabbed for defending myself. So I would ask the [c]ourt if y'all going to sentence him to anything today, house arrest is fine with me. I don't want to see an innocent man go to jail. He did nothing [to] me.

N.T., 5/26/23, at 23.

which has not been raised before the trial court cannot be raised for the first time on appeal." ***Commonwealth v. Lopata***, 754 A.2d 685, 689 (Pa. Super. 2000) (citation omitted). Because Appellant did not present to the trial court a claim pertaining to Johnson's statements at the sentencing hearing, we conclude that any issue relating to Johnson's statements is waived for purposes of appeal.

Even if Appellant had preserved the issue before the trial court, we would conclude that no relief is due on the basis of the following discussion by the trial court concerning the statements Johnson made during the sentencing hearing:

> This claim fails for two reasons: First, the court did not find Johnson's attempted recantation testimony credible. Second, the court did not rest its decision on Johnson's trial testimony alone. Johnson had difficulty remembering specific details of the attack, but there was overwhelming evidence that [A]ppellant was indeed one of the perpetrators of the attack. As stated above, the surveillance footage clearly showed [A]ppellant, dressed in a distinctive blue sweatshirt and white gloves, attacking Johnson while he lay defenseless in the street. Appellant was then seen at the hospital a few minutes later by police. He was wearing the same distinctive clothing as the person depicted in the surveillance footage. Appellant's car was similar to the one involved in Johnson's attack, and the knife covered in Johnson's blood was recovered from the center console of [A]ppellant's car.

Trial Court Opinion, 10/27/23, at 10-11.

In summary, we agree with counsel that the issues sought to be raised by Appellant lack merit. Further, we have reviewed the certified record and do not discern any other claims that are non-frivolous. Therefore, we grant counsel's application to withdraw and affirm Appellant's judgment of sentence.

- 18 -

Application to withdraw granted.  Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/3/2024