J-A20033-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| NOEL VEGA | : | |
| | : | |
| Appellant | : | No. 1981 MDA 2018 |

Appeal from the Judgment of Sentence Entered November 14, 2018
In the Court of Common Pleas of Berks County
Criminal Division at No(s):  CP-06-CR-0005092-2017

BEFORE:  GANTMAN, P.J.E., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.E.:            **FILED SEPTEMBER 06, 2019**

Appellant, Noel Vega, appeals from the judgment of sentence entered in the Berks County Court of Common Pleas, following his jury trial convictions for two counts of aggravated assault and one count of resisting arrest.[1]  We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises the following issues for our review:

> [WHETHER THE EVIDENCE WAS INSUFFICIENT TO CONVICT APPELLANT OF AGGRAVATED ASSAULT AND RESISTING ARREST?]
>
> [WHETHER APPELLANT'S CONVICTIONS FOR AGGRAVATED

---

[1] 18 Pa.C.S.A. §§ 2702(a)(3) and 5104, respectively.

ASSAULT AND RESISTING ARREST WERE AGAINST THE WEIGHT OF THE EVIDENCE?]

[WHETHER THE COURT IMPOSED A MANIFESTLY EXCESSIVE SENTENCE, WHERE IT FAILED TO CONSIDER APPELLANT'S CRIMINAL HISTORY, BACKGROUND, AND EFFECT OF UNDERLYING OFFENSES ON VICTIMS?]

(Appellant's Brief at 2-5).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable M. Theresa Johnson, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed March 21, 2019, at 5-17) (finding: **(1)** evidence was sufficient to convict Appellant of aggravated assault; that police officers did not seek medical treatment or miss time from work is immaterial in light of other trial evidence indicating Appellant caused injury to officers while they were performing their law enforcement duties; further, Appellant did not raise insanity defense at trial, so evidence that one or more officers knew of Appellant's mental illness is irrelevant and inadmissible; to extent Appellant asserts evidence was insufficient to convict him of aggravated assault because he did not do anything to officers until one officer pushed him, it appears Appellant attempts to argue he acted in self-defense; Appellant, however, failed to raise self-defense claim at trial; additionally, record belies Appellant's assertion that he did not consciously intend to cause or attempt to cause injury to officers; evidence demonstrated Appellant attempted to cause and caused

bodily injury to Officers Federico and Lower while in performance of their duties as police officers; evidence was sufficient to convict Appellant of resisting arrest; during altercation with police who were attempting to detain Appellant, Appellant attempted to injure and did injure Officers Federico and Lower; officers had to use substantial force to overcome Appellant's resistance; Appellant also repeatedly failed to comply with officers' instructions to place his hands behind his back; officers requested backup due to Appellant's resistance; **(2)** as set forth in analysis of Appellant's sufficiency claim, verdict was not contrary to evidence; verdict was consistent with evidence and did not shock one's sense of justice; **(3)** with benefit of PSI, court sentenced Appellant within parameters of guidelines to standard range sentences on all charges; court's application of sentencing guidelines was reasonable; record belies Appellant's claims that sentencing court failed to consider certain factors; court considered all factors that Appellant claims court did not consider). Accordingly, we affirm on the basis of the trial court opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/2019

COMMONWEALTH OF PENNSYLVANIA   :   IN THE COURT OF COMMON PLEAS
  :   OF BERKS COUNTY, PENNSYLVANIA
  :   CRIMINAL DIVISION

VS.   :

  :   No. CP-06-CR-0005092-2017

  :

NOEL VEGA   :   Assigned to: Judge M. Theresa Johnson

Michael D. Dautrich, Esquire
*Attorney for Appellant*

Alisa R. Hobart, Esquire
*Attorney for the Commonwealth/Appellee*

Memorandum Opinion      March 21, 2019      M. Theresa Johnson, J.

## PROCEDURAL HISTORY

The defendant in the above-captioned case, Noel Vega ("Vega"), was charged with six counts of aggravated assault,[1] six counts of simple assault,[2] six counts of harassment[3] and one count of resisting arrest or other law enforcement[4] arising from an incident alleged to have occurred on October 17, 2017. On October 30, 2018, a jury found Vega guilty of two counts of aggravated assault[5] and the sole count of resisting arrest or other law enforcement. The Commonwealth withdrew all counts of simple assault and this court dismissed three counts of aggravated assault[6] on judgment of acquittal. This court found Vega guilty of all six counts of harassment. Prior to sentencing, the Commonwealth withdrew all the counts of harassment. On November 14, 2018, this court imposed a cumulative sentence on Vega of 42 months to 8 years in a State Correctional Facility. Appellant was given credit for the 49 days he had previously

[1] 18 Pa.C.S.A. §2702(a)(2) (3 counts) and 18 Pa.C.S.A. §2702(a)(3) (3 counts).
[2] 18 Pa.C.S.A. §2701(a)(1) (3 counts) and 18 Pa.C.S.A. §2701(a)(3) (3 counts).
[3] 18 Pa.C.S.A. §2709(a)(1) (3 counts) and 18 Pa.C.S.A. §2709(a)(3) (3 counts).
[4] 18 Pa.C.S.A. §5104.
[5] 18 Pa.C.S.A. §2702(a)(3) (2 counts).
[6] 18 Pa.C.S.A. §2702(a)(2) (3 counts).

1

served. On November 21, 2018, Vega filed a Post-Trial Motion which this court denied by order dated December 5, 2018.

On December 7, 2018, Vega filed a Notice of Appeal to the Superior Court of Pennsylvania from the judgment of sentence entered on November 14, 2018, and the order of December 5, 2018, denying Vega's Post-Trial Motion. On December 11, 2018, Vega was ordered to file a concise statement of matters complained of on appeal within twenty-one days from the date of the concise statement order's entry on the docket. On December 26, 2018, upon motion of counsel, Vega was granted an extension and ordered to file a concise statement within thirty days from the filing date of the transcripts. The transcripts were filed on January 4, 2019, and January 16, 2019. On January 25, 2019, upon motion of counsel, Vega was granted an additional thirty days to file his concise statement. On February 22, 2019, Vega filed a Concise Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b) challenging the weight of the evidence, sufficiency of the evidence and claiming that this court's sentence was manifestly excessive.

## DISCUSSION

### Statement of Facts

On October 17, 2017, at approximately 8:00 a.m., Officer Valery Lower ("Officer Lower"), Officer Charles Federico ("Officer Federico"), and Officer Dale Trythall ("Officer Trythall") of the Reading Police Department (collectively referred to as "Officers") were dispatched to 519 Moss Street, Reading, Berks County, Pennsylvania ("Residence") for an unknown problem. Notes of Testimony, Jury Trial, October 29, 2018, to October 30, 2018 ("N.T.") at 77-78, 96, 117-118, 140-141. The Officers were in uniform, wearing badges of authority and operating marked patrol vehicles. N.T. at 77, 90, 117-118, 141. Upon arrival at

2

the Residence, the Officers encountered Vega and identified themselves to him as police officers. N.T. at 78-79, 90, 118-119, 142. Vega confirmed that he lived at the Residence and granted the Officers permission to enter. N.T. at 78-79, 99-100, 134.

While Officer Federico and Officer Lower were inside the Residence with Vega's wife, Mercedes, Vega argued with Officer Trythall.[7] N.T. at 80-81, 100, 119-120, 134, 143-144, 155. After Officer Lower exited the Residence, Vega continued to argue with both Officer Trythall and Officer Lower. N.T. at 81-82, 120, 135, 145-146, 155. Officer Federico exited the Residence and encouraged Vega to sit down and relax. N.T. at 82, 84, 102-103. Vega was agitated and used profanity when responding to Officer Federico. N.T. at 82, 84. Officer Federico pulled out his handcuffs and told Vega that he would be placed in handcuffs if he didn't calm down. N.T. at 87, 122, 137, 146.

Vega came towards Officer Federico prompting Officer Federico to raise his hands and command Vega to stop. N.T. at 84, 106, 121. Officer Federico's hands were up with his palms facing towards Vega. N.T. at 84. Vega continued to walk towards Officer Federico until he came into contact with his open hands. N.T. at 84, 107. At that time, Officer Federico gave Vega a slight push and instructed him to sit down. N.T. at 84, 107, 112, 115. In response, Vega knocked Officer Federico's arms away, pushed him and threw a punch at Officer Federico's head. N.T. at 84, 86, 107-112, 115, 122, 126, 131, 137. Vega's punch missed Officer Federico. N.T. at 84-85. Officer Federico grabbed Vega's arm and pushed him up against the side of the Residence. N.T. at 85, 87, 110-111. All three of the Officers engaged Vega to get control of him. N.T. at 85, 110, 112, 138, 157. Vega was instructed to put his hands behind his back and

---

[7] Officer Federico testified that Mercedes did not speak English, but he did hear her say the words "marijuana" and "mental" during his interaction with her. N.T. at 100, 101.

3

to stop resisting. N.T. at 87, 88, 112, 122, 126, 162-163. Vega bent over and kept his arms in front of him. N.T. at 87, 114.

During the Officers' attempt to control Vega, Vega physically attacked Officer Federico, Officer Lower and Officer Trythall. N.T. at 88, 96, 124, 138, 147-148. Vega elbowed Officer Trythall in his rib cage below his vest. N.T. at 124, 125, 138. Vega struck Officer Trythall's leg/groin with a ceramic coffee cup. N.T. at 96, 116, 124, 125, 132. Vega also "hammer punched" Officer Federico in the groin causing him significant pain (a "10" on a scale of 1-10). N.T. at 88, 89, 123, 149. Vega kicked Officer Lower in her shin, knee and upper groin area. N.T. at 148, 157-158. During the altercation, the Officers attempted to physically subdue and restrain Vega using pressure points and physical strikes to Vega's body. N.T. at 123-125, 138. Officer Federico deployed his taser with minimal impact on Vega. N.T. at 88, 114, 126-127, 149. The Officers were eventually able to take Vega to the ground, but he continued to resist and kept his left arm tucked underneath him. N.T. at 88, 127-128, 149-150. Officer Federico kneed Vega twice in the back before he gave up his other arm and was placed into handcuffs. N.T. at 89, 126, 128. Due to Vega's behavior, additional backup was requested by the Officers. N.T. at 90, 150. After Vega was placed into handcuffs, he refused the Officers' instructions to stand up and to walk to the transport wagon. N.T. at 91. After the Officers lifted Vega up and pushed him to the transport wagon, Vega was searched with negative results. N.T. at 91-92, 129. Vega was placed in the transport wagon and taken to the hospital for a medical evaluation. N.T. at 93, 94.

As a result of the altercation with Vega, Officer Federico sustained a cut on his hand and suffered pain in his groin, knee and hand. N.T. at 94. Officer Trythall had abdominal pain as well as leg/groin pain from being struck with the ceramic coffee cup. N.T. at 130. Officer

4

Trythall's pants were ripped during the altercation. N.T. at 131. Officer Lower suffered black and blue marks on her knee, shin, crotch and groin area. N.T. at 151. None of the Officers sought medical attention or lost time at work due to their injuries. N.T. at 96, 114-115, 138-139, 151, 152, 158.

### Sufficiency of the Evidence - Generally

When reviewing a challenge to the sufficiency of the evidence supporting a defendant's conviction, an appellate court is required to evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Rahman*, 75 A.3d 497, 500 (Pa. Super. 2013) (citation omitted).

> The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could have determined that all of the elements of the crime have been established beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the jury unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Smith*, 848 A.2d 973, 977 (Pa. Super. 2004) (citation omitted).

An appellate court "may not substitute [its] judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates

5

the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld." *Rahman*, 75 A.3d at 501.

## Sufficiency of the Evidence – Aggravated Assault

Vega alleges that the evidence presented by the Commonwealth was insufficient to establish the crime of aggravated assault under 18 Pa.C.S.A. §2702(a)(3). In support of his claim, Vega argues that 1) the Officers did not receive medical treatment for their injuries; 2) the Officers continued with their work schedules with no time lost from work; 3) there were no photographs of the Officers' injuries entered into evidence; 4) one or more of the Officers had notice that Vega suffered from mental health issues; 5) Vega did not take action against the Officers until he was pushed; and 6) it was not Vega's conscious object to cause or attempt to cause injury to the officers.

An individual is guilty of aggravated assault under 18 Pa.C.S.A. §2702(a)(3) if he or she "attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty." 18 Pa.C.S.A. §2702(a)(3). A police officer is a person enumerated in subsection (c). 18 Pa.C.S.A. §2702(c)(1). Bodily injury is defined as the "impairment of physical condition or substantial pain." 18 Pa.C.S.A. §2301.

The only differences between assaults under § 2701(a)(1) and § 2702(a)(3) are that the latter applies when the assault is committed upon one of the persons enumerated in § 2702(c) in the performance of their duties and the latter does not allow for a *mens rea* of recklessness. Consequently, for purposes of defining the bodily injury component of these provisions, whether the assault is characterized as "simple" or "aggravated" has no bearing on our interpretation. Calling a simple assault upon a police officer aggravated

6

merely reflects the legislature's intent to punish this assault more severely than one committed upon a layperson, which is accomplished by grading the offense as a felony of the second degree rather than a misdemeanor of the second degree. *Commonwealth v. Marti*, 779 A.2d 1177, 1182-1183 (Pa. Super. 2001) (citation omitted).

"[I]n a prosecution for aggravated assault on a police officer the Commonwealth has no obligation to establish that the officer actually suffered a bodily injury; rather, the Commonwealth must establish only an *attempt* to inflict bodily injury, and this intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury." *Commonwealth v. Brown*, 23 A.3d 544, 560 (Pa. Super. 2011) (citation omitted) (emphasis in original). "The finder of fact is free to conclude that the accused intended the natural and probable consequences of his actions to result therefrom." *Commonwealth v. Rosado*, 684 A.2d 605, 608 (Pa. Super. 1996) (citation omitted).

In this case, Vega argues that there was insufficient evidence to convict him of aggravated assault as the Officers did not receive medical treatment for their injuries or lose time from work. An identical claim was rejected by the Pennsylvania Superior Court in *Commonwealth v. Richardson*, 636 A.2d 1195 (Pa. Super. 1994). In *Richardson*, a police officer responded to a radio call for a disturbance and, while on scene, was punched in the face by the appellant. *Richardson*, 636 A.2d at 1196. The appellant's punch broke the officer's glasses, caused the officer to stumble backwards, and resulted in pain for a few days. *Id*. However, the officer did not seek medical treatment or miss work. *Id*. The appellant was convicted of simple assault after a bench trial. *Id*. at 1195. On appeal, the appellant claimed that the officer "did not suffer bodily injury because he did not receive any medical treatment or miss any work as a result of the blow to the face." *Id*. at 1196. The Superior Court responded as follows:

7

Such a claim is frivolous. Appellant cites no authority which states that such consequences are necessary to sustain a simple assault conviction. [The officer] testified that [a]ppellant's punch broke his glasses, caused him to stumble backwards, and caused pain for the next few days. Such testimony was sufficient to sustain a finding that [a]ppellant *actually* caused bodily injury to [the officer].

*Id.* Therefore, in accordance with *Richardson*, Vega's claim that the evidence was insufficient to convict him of aggravated assault because the Officers did not seek medical treatment or miss time from work is frivolous and should be denied.

Vega next claims that the evidence was insufficient because there were no photographs introduced into evidence to demonstrate any of the injuries that the Officers sustained during the altercation. Vega's claim that there were no corroborating photographs of the Officers' injuries is more properly characterized as a weight of the evidence challenge and is addressed below.

Vega next argues that the evidence was insufficient because at least one or more of the officers were on notice that Vega had mental health issues and those issues were the reason his wife called 9-1-1. However, "under Pennsylvania law, mental illness is not a defense to criminal liability unless the mental illness rises to the level of legal insanity under Section 314(c)(2)." *Commonwealth v. Andrews*, 158 A.3d 1260, 1264 (Pa. Super. 2017). Furthermore, the Superior Court has held that evidence of mental illness may only be introduced "in conjunction with a defense of insanity." *Commonwealth v. Hatfield*, 579 A.2d 945, 947 (Pa. Super. 1990). In the absence of an insanity defense, "evidence of mental illness is irrelevant and therefore, inadmissible." *Id.* In this case, Vega did not raise a defense of insanity. As a result, the evidence that one or more of the Officers knew of Vega's mental illness was irrelevant and inadmissible. Vega's claim should be denied.

8

Vega next argues that the evidence was insufficient because he did not do anything to the Officers until he was pushed by one of them. Vega appears to be arguing that he was acting in self-defense in response to the physical contact initiated by Officer Federico. However, this issue was not raised at trial. The Pennsylvania Rules of Appellate Procedure state that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. §302(a). "Since [Vega] did not raise the issue of self-defense at trial, the Commonwealth had no burden to disprove it. Nor can [Vega] argue self-defense for the first time on appeal; the claim is waived." *Commonwealth v. Butler*, 647 A.2d 928, 931 (Pa. Super. 1994) (citation omitted). Vega's claim should be denied.

Vega claims that the evidence was insufficient because it was not his conscious object to cause or attempt to cause injury to the Officers. However, as set forth below, the record belies Vega's assertion.

The Pennsylvania Crimes Code defines the general requirements of culpability in Section 302. Specifically, regarding intentional acts, the Crimes Code states:

(1) A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

18 Pa.C.S.A. §302(b)(1).

"[I]intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury." *Commonwealth v. Richardson*, 636 A.2d 1195, 1196 (Pa. Super. 1994) (citation omitted).

9

The Crimes Code also sets forth the definition of a criminal attempt in Section 901. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. §901(a).

When viewing the facts in the light most favorable to the Commonwealth, the evidence was sufficient to convict Vega of aggravated assault against Officer Federico. The testimony presented by the Commonwealth established that Vega threw a punch at Officer Federico's head. Although Vega missed with his punch, he clearly attempted to cause bodily injury to Officer Federico. Also, during the Officers' altercation with Vega, Vega "hammer punched" Officer Federico in the groin which caused him substantial pain. Officer Federico testified to a pain level of "10" on a scale of 1-10 as a result of this punch. It is clear that Vega attempted to cause and also caused bodily injury to Officer Federico while in the performance of his duties as a police officer. Therefore, the evidence was sufficient to support Vega's conviction for aggravated assault on Officer Federico.

The evidence was also sufficient to convict Vega of aggravated assault against Officer Lower. The testimony presented by the Commonwealth established that Vega kicked Officer Lower in her shin, knee and upper groin area during his altercation with the Officers. Officer Lower suffered black and blue marks on those areas. Vega attempted to cause and was successful in causing bodily injury to Officer Lower while in the performance of her duties as a police officer. When viewing the evidence in the light most favorable to the Commonwealth, the jury could have determined that the elements of aggravated assault had been established beyond a reasonable doubt. Therefore, the evidence was sufficient to support Vega's conviction for aggravated assault against Officer Lower.

10

## Sufficiency of the Evidence – Resisting Arrest or other Law Enforcement

Vega alleges that the evidence presented by the Commonwealth was insufficient to establish the crime of resisting arrest or other law enforcement. Vega claims that 1) a person cannot commit resisting arrest unless he creates a substantial risk of bodily injury; 2) Vega did not resist by merely attempting to run away from the officers or scuffling with them; 3) the evidence demonstrated nothing more than a scuffle in a confined space; and 4) it was not Vega's conscious object to cause or attempt to cause injury to the Officers.

An individual is guilty of resisting arrest or other law enforcement "if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S.A. §5104; *See Commonwealth v. Soto,* 2018 WL 6816969, *11 (Pa. Super. 2018) (appellant's attempt to punch a police officer and remove his taser was sufficient to convict appellant of resisting arrest). Even the "use of passive resistance requiring substantial force to overcome [will provide] sufficient evidence for upholding [a] resisting arrest conviction." *Commonwealth v. Thompson,* 922 A.2d 926, 928 (Pa. Super. 2007).

In this case, the evidence presented by the Commonwealth was sufficient to convict Vega of resisting arrest or other law enforcement. Although Vega characterizes the altercation as a "scuffle in a confined space" and an attempt "to run away", it was during this "scuffle" that Vega not only created a substantial risk of bodily injury to the Officers but actually inflicted bodily injury upon them. As set forth above, Vega threw a punch at Officer Federico's head and "hammer punched" him in the groin which caused him substantial pain. Vega kicked Officer Lower on her body resulting in black and blue marks. Officer Trythall was elbowed in his rib

11

cage and struck on his leg/groin with a ceramic coffee cup. Officer Trythall had abdominal pain and leg/groin pain following the altercation. The Officers were also required to use substantial force to overcome Vega's resistance. During the altercation, Vega was instructed to place his hands behind his back, but he kept his arms in front of him. The Officers used pressure points and deployed their taser in an effort to subdue Vega. Even after Vega was taken to the ground, he continued to keep one arm tucked underneath him. Vega only gave up his arm after Officer Federico kneed him twice in the back. Additional backup was requested by the Officers due to Vega's resistance. When viewing the evidence in the light most favorable to the Commonwealth, the jury could have determined that the elements of resisting arrest or other law enforcement had been established beyond a reasonable doubt. Therefore, the evidence was sufficient to support Vega's conviction.

## Weight of the Evidence

Vega claims that his convictions on each offense were against the weight of the evidence for the same reasons he challenges the sufficiency of the evidence.

"A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa. Super. 2006) (citation omitted).

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is

12

against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim. *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citations omitted).

In the case at bar, Vega claims that the verdict was against the weight of the evidence. However, as set forth above in this court's analysis of the sufficiency of the evidence, the verdict was not contrary to the evidence as the jury was presented with a case upon which to convict Vega. The jury evaluated the evidence, determined the credibility of witnesses and, when assessing the weight of the evidence, believed the evidence presented by the prosecution and rendered a guilty verdict. Therefore, the verdict was consistent with the evidence presented and did not shock anyone's sense of justice.

## Vega's Sentence

Vega claims that this Court's cumulative sentence imposed on Vega of 42 months to 8 years in a State Correctional Facility was manifestly excessive under the circumstances. Vega raises the follow issues: 1) although Vega had a prior record score of 5 he had not been involved in the criminal justice system for over fifteen years; 2) Vega's prior crimes were non-violent offenses; 3) Vega had a history of mental health issues that he was seeking help for and his wife's call to 9-1-1 was due to those issues; 4) Vega suffered an injury in 2015 and was receiving neck and back treatment; 5) none of the Officers sustained a substantial injury that prohibited them from working.

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant. And, of course, the court must

13

consider the sentencing guidelines." *Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa. Super. 2015) (alterations and citation omitted).

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted).

"There is no absolute right to appeal when challenging the discretionary aspect of a sentence. Rather, an appeal is permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code." *Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa. Super. 2013) (alterations, quotation marks and citations omitted). "An appellant making an excessiveness claim raises a substantial question when he sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation and quotation marks omitted).

> The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

14

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court. 42 Pa.C.S.A. §9781(c).

A trial court's standard-range sentence will only be reversed "if the sentence is clearly unreasonable when viewed in light of the four statutory factors outlined in 42 Pa.C.S. §9781(d)." *Commonwealth v. Corley*, 31 A.3d 293, 298 (Pa. Super. 2011) (citations omitted). Specifically, the appellate court evaluates (1) [t]he nature and circumstances of the offense and the history and characteristics of the defendant; (2) [t]he opportunity of the sentencing court to observe the defendant, including any presentence investigation; (3) [t]he findings upon which the sentence was based; [and] (4) [t]he guidelines promulgated by the commission. 42 Pa.C.S. §9781(d).

When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation. Where the sentencing court had the benefit of a presentence investigation report ("PSI "), we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. *Commonwealth v. Griffin*, 65 A.3d 932, 937-938 (Pa. Super. 2013) (quotation marks and citations omitted).

15

In the case at bar, this court sentenced Vega within the parameters of the sentencing guidelines[8] and, therefore, Vega must demonstrate that the application of those guidelines would be clearly unreasonable. 42 Pa.C.S.A. §9781(c)(2). Upon review of the factors as set forth in 42 Pa.C.S. §9781(d), this court's application of the sentencing guidelines was clearly reasonable. Appellant was found guilty of aggravated assault and resisting arrest after a jury trial. As the trial judge, this court was familiar with the nature and circumstances of the offenses committed by Vega and was able to observe Vega during the trial and sentencing. N.T.S. at 9. Vega's PSI was available and reviewed by this court at sentencing which provided with court with, *inter alia*, information on Vega's characteristics and his prior record. N.T.S. at 2, 4, 6, 7, 10. This court considered that Vega was under mental distress on the day of the altercation and that it took place in a small area. N.T.S. at 9. This court also considered that the Officers were able to finish their shifts and did not seek medical treatment. N.T.S. at 10. The Commonwealth presented, and this court considered, the sentencing guidelines and sentenced Vega to a standard range sentence on all charges. N.T.S. at 3-4, 14.

Vega argues that this court failed to consider certain factors but his assertions are contradicted by the record. Through the PSI, this court was made aware of Vega's high prior record score and that Vega's most recent conviction was on December 13, 2002. This information was also provided by the Commonwealth and by Vega's attorney at sentencing. N.T.S. at 3, 6. A review of the PSI also revealed that Vega had not been convicted of any violent crimes. This information was also placed on the record by Vega's attorney at sentencing. N.T.S.

---

[8] At sentencing, Vega had a prior record score of 5. Notes of Testimony, Sentencing Hearing, November 14, 2018 ("N.T.S.") at 3. The offense gravity score for count 4, aggravated assault, and count 5, aggravated assault, is 6 resulting in a standard range of 21-27 months plus or minus 6. N.T.S. at 3; 204 PA ADC §303.15; 204 PA ADC §303.16(a). Vega was sentenced to serve a standard range sentence twenty-one months to four years on count 4 followed by another standard range sentence of twenty-one months to four years on count 5. The offense gravity score for count 7, resisting arrest or other law enforcement, is 3 resulting in a standard range of 6-16 months plus or minus 3. N.T.S. at 3-4; 204 PA ADC §303.15; 204 PA ADC §303.16(a). Vega was sentenced to serve a standard range sentence of one to two years concurrent with count 4.

16

at 6. This court was made aware of and considered Vega's mental health issues at sentencing. N.T.S. at 7-13. The PSI indicated that Vega suffered from major back problems. Finally, as set forth above, this court considered that the Officers did not seek medical treatment and that they were able to finish their shifts. This court considered all of the factors raised by Vega within his concise statement and sentenced him to standard range sentences on all charges. Therefore, Vega's claim must fail as it is contradicted by the record.

For the foregoing reasons, we respectfully request that Vega's Appeal be DENIED and his sentence AFFIRMED.

COMMONWEALTH OF PENNSYLVANIA    DOCKET: CP- 06 - CR – 5092-2017

v.

NOEL VEGA                          DATE: March 21, 2019
                    **Defendant**

"B.R.Crim.P.306.1(f)(g)" requires a copy of your motion/petition for each party.
"B.R.Crim.P.306.1(f)" requires that the names and addresses of those to be served be provided.

Check the appropriate boxes to ensure proper service. Initial and X each applicable party to receive a copy.

Attach this Certificate of Distribution to the original document. Retain the second copy for your files.

| CERTIFICATE OF DISTRIBUTION | PROOF OF SERVICE-<u>OFFICE USE ONLY</u> |
|---|---|

☒   Original Clerk of Courts
☒   Court Information Management
☒   Name and Address of Moving Party:
      Judge M. Theresa Johnson

☒   by personal delivery
_____ by certified mail
_____ by regular mail

☒   District Attorney: ALISA HOBART

    by personal deliver

☐   Public Defender:

_____ by personal delivery

☒   Name and Address of Private Attorney:
      MICHAEL DAUTRICH
      526 Court Street
      Reading PA 1901

_____ by personal delivery
_____ by certified mail
_____ by regular mail

☐   Sheriff

☐ _____ by personal delivery

☐   Berks County Jail System

☐ _____ by certified mail
_____ by regular mail

☐   Adult Probation Office

☒ _____ by personal delivery

☐   Other:

      LAST KNOWN ADDRESS

☐ _____ by personal delivery
_____ by certified mail
_____ by regular mail

☐   Other:
      District Attorney:

☒ _____ by personal delivery
_____ by certified mail
_____ by regular mail

I certify I have delivered sufficient copies of the attached document(s) and request service as set forth above.

I hereby certify I served the document(s) on the parties indicated above on the _____ day of _____, 20___.

Signature

Signature of Server

Statements in this proof of service are made subject to the penalties for unsworn falsification to authorities under the Crimes Code § 4904 (18PACS § 4904).

# File Copy Recipient List

Addressed To:     Michael David Dautrich (Private)
                  Dautrich And Dautrich Law Offices P.c.
                  526 Court St
                  Reading, PA  19601-3412